# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In the Matter of:<br>JERRY GLEN BROOKS<br>SSN: XXX-XX-2845<br><br>Debtor(s). | CASE NO. 10-84089-JAC-11<br><br>CHAPTER 11 |
| NORTH ALABAMA BANK<br><br>Plaintiff(s),<br>v.<br><br>JERRY GLEN BROOKS<br><br>Defendant(s). | A.P. No. 11-80005-JAC-11 |

## MEMORANDUM OPINION

This matter having come before the Court for trial on the complaint in the above referenced matter, and the Court having considered the evidence submitted at trial and the post-trial briefs filed by the parties, the Court hereby finds that the debt at issue is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Section 523(a)(2)(B) makes nondischargeable

    (a) . . . . any debt –

        (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

            (B) use of a statement in writing –

                (i) that is materially false;
                (ii) respecting the debtor's or an insider's financial condition;
                (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

>           (iv) that the debtor caused to be made or published with intent
>           to deceive[.][1]

Exceptions to discharge are to be read narrowly to provide an honest, but unfortunate debtor a fresh start.[2]   To this end, the objecting creditor carries the burden of proving each element of a § 523(a) dischargeability claim by a preponderance of the evidence.[3]  A lack of proof as to any one element of a § 523(a) claim will be fatal.[4]

**FINDINGS OF FACT AND
PROCEDURAL BACKGROUND**

On July 15, 2011, the Court entered an order on plaintiff's motion for summary judgment finding that the debtor published to North Alabama Bank a financial statement dated April 21, 2009 produced for the purpose of renewing a loan; that the debtor misrepresented to North Alabama Bank through the financial statement his assets, the value of those assets, and his liabilities including the liens and encumbrances on property known as the Nick Davis Road property; and that the debtor published the financial statement with the intent to deceive.   The order left open the question whether or not North Alabama Bank

---

[1]    *See also Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994)(listing the elements of a cause of action under § 523(a)(2)(B)).

[2]    *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148,1152 (11th Cir. 2001); *HSSM #7 Limited Partnership v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 891 (11th Cir. 1996); *Carlan v. Dover (In re Dover)*, 185 B.R. 85, 87 (Bankr. N.D. Ga. 1995).

[3]    *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654 (1991).

[4]    *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 303 (11th Cir. 1994).

2

relied, to its detriment, on the financial statement dated April 21, 2009 and held same over for trial which this Court conducted on August 9, 2011.

At trial, the evidence shown that on April 14, 2006, North Alabama Bank extended a line of credit to J & L Properties, LLC in the amount of $1,494,000 and subsequently renewed the loan multiple times. The original loan and subsequent renewals were guaranteed by the debtor. As part of the loan approval process, North Alabama Bank required the debtor to produce a personal financial statement and tax return with each loan renewal. David Sanders ("Sanders"), vice president of North Alabama Bank, testified that the tax return is used to verify income and to substantiate the assets listed on the financial statement. He explained that if someone listed substantial assets on a financial statement but the tax return reflected very low income, this would cause the bank to question the assets listed on the financial statement and further investigate.

With the final renewal in 2009, the defendant signed a new guaranty dated May 6, 2009 and submitted an updated financial statement to North Alabama Bank dated April 21, 2009 and his most recent tax return. The April 2009 statement was a joint personal financial statement of the debtor and his wife. The debtor listed the value of the property located at Nick Davis Road as $396,800 owned free and clear of liens when in fact the property was only worth $300,000 and was encumbered by a line of credit in the amount of approximately $250,000 upon which some draws had been made.

Sanders testified that it is the bank's policy when making a small business loan, renewals or extensions of the loan, to obtain a personal financial statement by the guarantor

3

and the guarantor's most recent tax return. Sanders testified that he reviewed the April 2009 financial statement submitted by the defendant and the defendant's most recent tax return. After reviewing same and based upon the bank's past relationship with the debtor, Sanders recommended that the subject loan be renewed. Sanders testified that he relied upon the debtor's equity position in the Nick Davis Road property when making the recommendation. Had he known that the debtor had encumbered the property in January of 2009, just three months prior to the renewal, Sanders testified that he would not have recommended the renewal to North Alabama Bank's board of directors. Further, had Sanders known that the listed property value of $396,800 was inflated by nearly $100,000 he would have brought the discrepancy to the boards' attention. Sanders did not obtain an appraisal for the Nick Davis Road property because the bank did not take a mortgage on same.

The debtor testified that North Alabama Bank did not ask him to substantiate any of the information listed on the financial statement, but he admitted that the bank had no reason to distrust his word in April of 2009 when he submitted the financial statement.

## RELIANCE

For the debt at issue to be determined nondischargeable, North Alabama Bank must prove by a preponderance of the evidence that it both actually relied on the financial statement and that its reliance was reasonable.[5] North Alabama Bank does not have to

---

[5] *First Nat'l Bank of Central Alabama v. Moore (Moore)*, 2010 WL 1880573 *9 (Bankr. N.D. Ala. 2010).

4

demonstrate that the financial statement was the only factor that influenced its decision to renew the loan.   Partial reliance is sufficient.[6]

Whether a creditor's reliance was reasonable is a factual determination to be made in light of the totality of the circumstances.[7]  In *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 280 (11th Cir. 1995), the Eleventh Circuit stated:

> [t]his standard of reasonableness places a measure of responsibility upon a creditor to ensure that there exists some basis for relying upon the debtor's representations.  Of course, the reasonableness of a creditor's reliance will be evaluated according to the particular facts and circumstances present in a given case.

The Eleventh Circuit explained that reasonable reliance may be answered by asking the following questions:

> whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have altered an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.[8]

When extending credit or renewing a small business loan, it is North Alabama Bank's policy to obtain a personal financial statement by the guarantor and the guarantor's most recent tax return before making such loans.  Although the bank officer for North Alabama

---

[6]   *First Commercial Bank v. Robinson (In re Robinson)*, 192 B.R. 569, 576 (Bankr. N.D. Ala. 1996).

[7]   *First Commercial Bank v. Robinson (In re Robinson)*, 192 B.R. 569, 577 (Bankr. N.D. Ala. 1996).

[8]   *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 280-81 (11th Cir. 1995)(*quoting Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993)).

5

Bank admitted that he considered other factors when making the loan such as the debtor's reputation and previous account history, Sanders insisted that the debtor's financial statement and the potential cash flow from the debtor's equity position in the Nick Davis Road property was a determinative factor as well in his recommendation. Sanders testified that the debtor's personal assets and net worth listed on the financial statement at issue were important to the status of the loan renewal because the bank needed the right guaranty to cash flow the loan. Thus, the Court is satisfied that North Alabama Bank actually relied upon the financial statement.

The debtor argues that North Alabama Bank did not reasonably rely upon the debtor's financial statement because the bank did not inquire as to the extent of the non-debtor's interest in property listed in the statement. Sanders testified that he based his recommendation to renew in large part on the debtor's financial statement even though the financial statement was a joint financial statement and same failed to reflect the debtor's percentage ownership in the assets listed.

The only case cited by the debtor to support his argument that reliance upon a joint financial statement is unreasonable as a matter of law is that of *Flagship Bank and Trust Co. v. Woollacott (In re Woollacott)*, 211 B.R. 83 (Bankr. M.D. Fla. 1997). In *Woollacott,* the court determined that the creditor failed to satisfy its burden of proof under § 523(a)(2)(B) where the creditor failed to prove that the "Debtor stated in writing anything materially false on which it reasonably relied and that the Debtor made such statement with intent to

6

deceive."[9] While the court did note that the debtor submitted a joint financial statement for himself and his non-debtor wife, it is not clear from the minimal facts listed in the case that same was a decisive or determinative factor in the bankruptcy court's finding under § 523(a)(2)(B). Indeed, the main focus of the case was on whether under Florida law the debtor was entitled to reasonable attorney fees incurred for prevailing in the dischargeability proceeding pursuant to a fee provision in the parties' guaranty.

     North Alabama Bank recognizes that there are other split decisions addressing this fact situation. In *FirstMerit Bank v. Green (In re Green),* 240 B.R. 889, 893 (Bankr. N.D. Ohio 1999), the bankruptcy court found that reliance on a joint financial statement where only the debtor was obligated on the guaranty was not reasonable. The bankruptcy court found that the lack of specificity and detail in the joint financial statement indicating the debtor's or his wife's percentage interest in certain assets upon which the lender allegedly relied should have been a red flag to further investigate. Such reliance was not objectively prudent, the court concluded. While *Green* is similar to the case now before the Court, there are distinguishing facts in that case that are not present here. In *Green,* the court further explained that the lender's reliance was unrealistic because the loans were the first contact between the debtor and lender. "There was no familiarity or trust in their relationship which entitled [lender] to ignore circumstances surrounding the ownership of the Bank Accounts

---

     [9] *Flagship Bank and Trust Co. v. Woollacott (In re Woollacott)*, 211 B.R. 83, 86 (Bankr. M.D. Fla. 1997).

7

or the Real Estate."[10] In stark contrast in this case, the parties had a long and successful relationship. The debtor had a stellar business history and personal relationship with North Alabama Bank. The debtor even testified at the trial that North Alabama Bank had no reason to doubt his word in 2009 when he submitted the false financial statement.

Recently a Michigan district court found in the context of a commercial loan that a lender reasonably relied upon a financial statement listing marketable securities valued at $8,255,000 as being owned jointly by the debtor and his wife when in fact same were mostly owned by the wife. The debtor was "an established and successful member of the business community in which the [lender] served, and they trusted and believed his representations in the financial statement and in the loan agreements, so on balance the Court finds that there's nothing to suggest that the bank acted in bad faith here and nothing to suggest that its reliance was so unreasonable as to defeat a finding of reliance in fact."[11] Similarly, the facts in this case establish that the debtor was a successful member of the business community in which North Alabama Bank served and the bank trusted and believed in the debtor's representations in the financial statement.

While this case is admittedly a close call, on balance the Court finds that North Alabama Bank reasonably relied upon the debtor's April 2009 financial statement. The Court simply cannot find as the debtor urges that as a matter of law that a joint financial statement

---

[10] *FirstMerit Bank v. Green (In re Green),* 240 B.R. 889, 893 (Bankr. N.D. Ohio 1999).

[11] *Clarkston State Bank v. Oster (In re Oster)*, 2011 WL 739539 (E.D. Mich. 2011).

8

automatically negates reliance. The Court must still look to the totality of the circumstances of each case and doing so here finds that there is nothing to suggest that North Alabama Bank did not reasonably rely upon the April 2009 financial statement. North Alabama followed its standard practice when it renewed the subject loan in 2009. Based upon Sanders review of the April 2009 financial statement, the debtor's tax return, and the bank's previous business dealings with the debtor, Sanders was lead to believe that the statement was accurate. The debtor testified that the bank had no reason to doubt his word when he submitted the 2009 financial statement and there were no clear errors on the face of the statement requiring the bank to investigate further. Under the totality of the circumstances, Sanders had no reason to disbelieve the information submitted by the debtor and took reasonable steps to verify same by obtaining the debtor's tax return to substantiate the financial statement. Given this statement of facts, the Court finds that North Alabama Bank's reliance was reasonable.

A separate order will be entered consistent with this opinion.

Done and Ordered this day September 19, 2011

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc: Debtor(s)
 Gary P. Wolfe, attorney for plaintiff(s)
 Michael Lee, attorney for defendant